**GREGORY NICOLAYSEN (CA 98544)**
**27240 Turnberry Lane, Suite 200**
**Valencia, CA 91355**
**Telephone: (818) 970-7247**
**Facsimile:  (818) 998-8427**
**Attorney For Defendant,**
**Alexander Rivera**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR 07-1172-DDP |
| ) | |
| Plaintiff, ) | **REPLY TO GOVERNMENT'S** |
| ) | **OPPOSITION TO DEFENDANT'S** |
| ) | **(1) MOTION TO DISMISS; OR** |
| ) | **ALTERNATIVELY** |
| v. ) | **(2) SETTING EVIDENTIARY** |
| ) | **HEARING** |
| ) | **TO REQUIRE GOVERNMENT** |
| ) | **TO PROVE THAT** |
| ) | **DEFENDANT IS ABSENT OR** |
| ) | **UNAVAILABLE UNDER 18** |
| SERGIO PANTOJA, et. al., ) | **U.S.C. 3161(h)(3)** |
| ) | |
| ) | **DATE: February 22, 2010** |
| Defendants ) | **TIME: 3:00 p.m.** |
| ) | **CTRM: HON. Dean D. Pregerson** |
| _____ ) | |

## I.

## THE GOVERNMENT INCORRECTLY ARGUES

## THAT THE SPEEDY TRIAL CLOCK HAS NOT

## BEGUN TO RUN AS TO DEFENDANT RIVERA

The government contends that no speedy trial violation has occurred as to defendant Alexander Rivera ("Rivera") because the speedy trial clock has not even begun to run, arguing that the Second Superseding Indictment ("SSI") is the operative indictment and that Rivera has not even made an appearance under the SSI. (Gov. opp. at page 17 of 26, lines 4-8).  This argument is specious.

As argued in the original moving papers, Rivera's speedy trial rights were violated upon the passage of the May 5, 2009 trial date, due to the defective nature of the April 8, 2009 stipulation ("April 8 stipulation") which did not bear the signature of Rivera or his defense counsel and which failed to contain any evidence by which to meet the government's burden of establishing the "absence or unavailability of the defendant" for purposes of 18 U.S.C. 3161(h)(3).

The government seeks to avoid the significance of the speedy trial violation caused by the April 8 stipulation, by diverting the focus of the Court to present time and arguing that the SSI sets the framework for the speedy trial analysis.  The government is simply wrong.  The operative time frame for undertaking the speedy trial analysis is the submission of the April 8 stipulation up through the May 5 trial date.  The April 8 stipulation was essentially a sham instrument in regard to Rivera by amounting to nothing more than a unilateral assertion by the government as to Rivera's "absence or unavailability", thus failing to properly establish excludable time under the speedy trial act.  As a consequence, Rivera's speedy trial rights were

violated once the May 5, 2009 trial date came and went.

Importantly, the Court should note that the SSI was not filed until May 28, 2009 – AFTER the May 5, 2009 trial date had already passed, by which time the speedy trial violation caused by the defective April 8 stipulation had already occurred.  By diverting the court's focus away from the April 8 stipulation, the government seeks to have the Court conduct a speedy trial analysis within the time frame of the SSI; whereas, the operative time frame is from the filing of the April 8 stipulation to the May 5 trial date, during which time the government unilaterally sought to waive Rivera's speedy trial rights but failed to do so, resulting in a violation of Rivera's speedy trial rights after May 5, 2009.

## II.

### THE GOVERNMENT IMPROPERLY RELIES

### ON THE TWO SPEEDY TRIAL ORDERS

### ISSUED BY THE COURT ON APRIL 16, 2009

### AND JANUARY 14, 2010

The government contends that the speedy trial issues raised by Rivera have been resolved by the issuance of two speedy trial orders signed by this Court, dated April 16, 2009 (Pacer #323) and January 14, 2010 (Pacer #663).  The January 14 order was issued pursuant to a stipulation filed on January 12, 2010 (Pacer #658).

1 [Gov opp. at page 17 of 26, line 9; to page 20 of 26, line 17).

2
3       In the first place, the government should know better than to cite the

4 January 14, 2010 order.  This motion had already been filed by the time the

5 January 12 stipulation was filed; and the stipulation by its terms acknowledges this

6
7 pending motion and establishes an agreement by the government that a

8 determination of Rivera's speedy trial status will be deferred until after the court

9 has ruled on this pending motion. (See Jan 12 stip at page 8 of 21, lines 1-9).

10      With regard to the April 16, 2009 order, the Court issued that order

11
12 pursuant to the April 8, 2009 stipulation which, as argued in depth in Rivera's

13 moving papers, was legally deficient.[1]

14
15      It is particularly disgraceful that the government would contend that the

16 Court "appropriately overruled defendant's objections to the April 8, 2009 and

17 January 12, 2010 stipulations to continue the trial date." [Gov opp. at page 19 of 26,

18
19 lines 26-28].  As stated above, the January 12 stipulation expressly defers any

20 continuance of the trial date as to Rivera until this pending motion has been ruled

21 on; the order issued by the Court on January 14, 2010 does NOT overrule Rivera's

22

23      [1]     Shortly after the issuance of the April 16 order, defense counsel, Gregory

24 Nicolaysen, contacted AUSA Brian Michael for the purpose of coordinating a status
conference with the Court to raise the speedy trial issues that are the subject of the pending

25 motion.  AUSA Michael contacted the Court in this regard.  By email dated April 16, 2009,

26 AUSA Michael wrote to defense counsel as follows: "Greg, I just spoke to the Court.  Please
come see me today when you return to the 15th floor to see Martin.  Judge does not want a

27 status conference.  I will explain. B."

28

speedy trial objection.  The government is contradicting its own stipulation by making this argument.

Likewise, as to the April 8 stipulation, the Court did not overrule objections by issuing its order on April 16, 2009.  The order did not address objections. Instead, the Court simply adopted at face value the unilateral, unsubstantiated representations by the government in the body of the April 8 stipulation that Rivera was "absent and unavailable" within the meaning of the statute.

Thus, the government acts in a highly misleading manner in arguing that the court orders of April 16 and January 14 overruled Rivera's speedy trial objections and that these orders resolve the pending speedy trial issues raised by this motion.

The <u>Butz</u> and <u>Fogarty</u> cases cited by the government on page 20 of 26 are completely distinguishable from this case.  In both of those cases, the district court overruled speedy trial objections made by defendants in multi-defendant prosecutions to a continuance of the trial date.  These scenarios are very common in multi-defendant prosecutions.  Defendant Rivera does not dispute the general proposition that a court may overrule a speedy trial objection made by one or more defendants in a multi-defendant prosecution and thereby continue the trial date over a party's objection.  However, that is not the circumstance here.  Both the <u>Butz</u> and <u>Fogarty</u> cases involved defendants who were physically present in the district where the cases were pending; were engaged with counsel in the pretrial process;

and who were able to assert speedy trial objections.  Neither **Butz** nor **Fogarty**

involved the circumstance at issue here, where the defendant is not physically

present in the district to participate as a defendant in the defense of the prosecution

and to assert speedy trial objections; and the government claims that the defendant

is "absent" and "unavailable" within the meaning of section 3161(h)(3) in seeking to

justify a finding of excludable time as to that defendant.  In citing **Butz** and

**Fogarty**, the government tries to reduce the unique circumstances at hand to a

generic circumstance where a defendant has to accept a trial continuance over his

objection because other defendants are seeking additional time.  That is not this

case as to Rivera.


### III.

### THE COURT SHOULD CONDUCT AN EVIDENTIARY HEARING

### TO REQUIRE THE GOVERNMENT TO MEET ITS

### BURDEN OF PROVING RIVERA'S "ABSENCE OR

### UNAVAILABILITY" UNDER 18 U.S.C. 3161(h)(3)(A), (B)

The government's opposition overlooks the burden of proof set forth under

section 3161(h)(3).  By its terms, the statute provides that "the government shall

have the burden of going forward with the evidence in connection with any

exclusion of time under subparagraph 3161(h)(3)."  As discussed at length in

Rivera's original moving papers, the government's burden of proving absence / unavailability includes demonstrating that it has exercised the due diligence required by the statute.

In order to meet this burden, the government must present evidence at an evidentiary hearing.  The opposition papers lack any evidence to meet the government's burden.  Accordingly, this Court should grant Rivera's motion to dismiss, or at the very least, conduct an evidentiary hearing.

It is preposterous for the government to contend, as it does, that an evidentiary hearing would not serve any purpose "where, as here, defendant's absence is not in dispute." [Gov opp. at page 19 of 26, lines 21-23].  Astonishingly, the government overlooks the difference between the everyday usage of the term "absent", and its legal application under the statute.  To the government, "absent" means simply that Rivera is not here.  Yes, we all agree that he is not here.  However, as is the case with many words and phrases, there is a significant difference between everyday usage and legal application.  Under section 3161(h)(3)(B), the term "absent" has a specific legal application, as the following excerpt makes clear:

> For purposes of subparagraph (A) of this paragraph, a
> defendant or essential witness shall be considered absent
> when his whereabouts are unknown and, in addition, he

7

is attempting to avoid apprehension or prosecution or his

whereabouts cannot be determined by due diligence.

The government has the burden of going forward in establishing that Rivera is "absent" *within these statutory criteria*.  Likewise, the government has the same burden in establishing that Rivera is "unavailable" *within the statutory criteria* which are set forth in 3161(h)(3)(B) as follows:

For purposes of such subparagraph, a defendant or essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial.

The government's opposition fails to make any evidentiary showing within these statutory criteria.  On this basis, the motion to dismiss should be granted.  At the very least, an evidentiary hearing should be held.

The importance of the government's burden of proof in the context of this speedy trial analysis cannot be understated.  It is precisely for the purpose of AVOIDING THE BURDEN OF PROOF that the government submitted the April 8 stipulation. Likewise, the government gives short shrift to its burden of proof in its opposition papers, electing instead to delegate blame to Rivera himself in claiming

that he is responsible for his own absence / unavailability by being a fugitive (discussed below).  This is nonsense.

Circuit courts have ruled in favor of defendants where the government has failed to meet its burden under 3161(h)(3) of proving that a defendant or essential witness is "absent" or "unavailable" for trial.   In <u>United States v. Hamilton</u>, 46 F.3d 271, 274 (3rd Cir. 1995), the government filed a motion to continue defendant's trial indefinitely, requesting that the district court issue an excludable time order. The government contended that certain drug couriers were "essential witnesses" and were "unavailable" within the meaning of 18 U.S.C. § 3161(h)(3)(A), thereby establishing a basis for excludable time.  In a ruling that was affirmed by the Third Circuit, the district court denied the government's motion, ruling that the government had failed to meet its burden of establishing that these witnesses were "unavailable" under the statute.

Similarly, in <u>United States v. McNeil</u>, 911 F.2d 768, 774 (D.C. Cir. 1990), the D.C. Circuit reversed a district court order which had continued the trial date based on an excludable time finding that a government witness constituted an "essential witness" who was "unavailable" within the criteria of section 3161(h)(3). The Circuit held that the government had failed to meet its burden of proving that the individual constituted an "essential witness" under the statute so as to justify an excludable time order on the ground of unavailability.  Specifically, the Court

found that

> "Such vague, unsupported assertions do not satisfy the
>
> Government's "burden of going forward with the
>
> evidence in connection with any exclusion of time under
>
> subparagraph 3161(h)(3)." 18 U.S.C. 3162(a)(2).

911 F.2d at 774.  In so holding, the Circuit vacated the defendant's convictions and

remanded back to the district court under 18 U.S.C. 3162(a)(2) for consideration

whether to dismiss the indictment with or without prejudice.

In short, the burden of proof is an inescapable component of the speedy trial

analysis before this Court.  The government's failure to meet its burden of going

forward necessitates a dismissal or, at a minimum, an evidentiary hearing.


## IV.

## THE GOVERNMENT IMPROPERLY SEEKS TO AVOID

## ITS BURDEN OF PROOF BY UNILATERALLY DESIGNATING

## RIVERA AS A FUGITIVE

The government contends that Rivera is a fugitive and thus cannot assert a

speedy trial violation. [Gov opp. at pages 23-24 of 26].  This contention is

completely unfounded and represents a tactic by which the government seeks to

avoid its burden of meeting the due diligence standard under section 3161(h)(3).

A "fugitive from justice" is defined as any person who has fled from any state to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding. 18 U.S.C. § 921(a)(15).  <u>United States v. Collins</u>, 61 F.3d 1379, 1385 (9th Cir. 1995).   Rivera does not fall within this definition.

The government has *unilaterally designated* Rivera as a fugitive to serve its own convenience in the speedy trial analysis.  The government points to the fact that Rivera is outside the U.S. and claims that he is refusing to return to the U.S. to face the pending charges.  None of the cases cited by the government addresses the circumstance here where it is the government itself that is responsible for having deported the defendant and by doing so, placed the defendant outside the U.S.  The government's characterization of Rivera as a fugitive takes no responsibility whatsoever for the government's actions in removing Rivera from this country.

To highlight the government's avoidance of responsibility, the opposition papers seek to delegate blame to the Bureau of Prisons and emphasize that the U.S. Attorney's Office had no role in the deportation. (See declaration of AUSA Brian Michael).  What is pivotal here is the fact that the U.S. government deported Rivera; not how it occurred.  The speedy trial violation is no less significant if it was an accident or inadvertent; and the government cannot trivialize its own conduct by unilaterally deciding to characterize Rivera as a fugitive as a subterfuge for its own blunder.  Moreover, the government speaks with one voice, thus making it

11

1
2
3
4

immaterial whether the Bureau of Prisons and/or U.S. Attorney's Office ultimately

bears responsibility for what happened.  Either way, it is the U.S. government, the

plaintiff in this action.

5
6
7
8
9
10
11
12
13
14
15
16
17

Moreover, the cases cited by the government do not stand for the proposition

that a defendant who has been deported back to his native country during the

pendency of a prosecution has an obligation to return to the U.S. to continue facing

the charges, thereby making him a fugitive if he doesn't come back.  This is a

significantly different set of circumstances from those where the defendant is in a

foreign country of his own volition (e.g., living overseas) and while there, learns

about an indictment and refuses to come to the U.S.  The government cites no

authority for the proposition that after being deported back to his native country

by the U.S. government during the pendency of a federal criminal prosecution, the

defendant has an obligation to turn around and come back, or be deemed a fugitive.

18
19
20
21
22
23
24
25
26
27

For example, the government relies on United States v. Sandoval, 990 F.2d

481 (9th Cir. 1993), in arguing that Rivera is a fugitive, citing the proposition from

the opinion that a fugitive is someone "whose location is unknown, or who is

successfully resisting government efforts to bring him to the jurisdiction." (Gov.

Opp. at 19 of 26).  Sandoval is not a case involving the government's actions in

causing a defendant to be in a foreign country, as is the case here.  In fact, Sandoval

himself skipped bail, the quintessential opposite of the facts pertaining to Rivera.

28

990 F.2d at 485.  Yet the government's opposition here is written from the vantage point of treating Rivera as if he is no less responsible than a defendant who skipped bail.

Moreover, the legal standard for defining a fugitive which is cited in Sandoval has no bearing here.  The government cannot properly claim that it is unaware of Rivera's location.  The government clearly knows Mr. Rivera's location, since it deported him to his native country.  Nor can the government plausibly contend that Rivera is resisting efforts to bring him to the Central District of California.  The government's opposition does not contain any evidence of any such efforts; most notably, the opposition papers make no mention of any contacts with law enforcement or government representatives in Rivera's native country to locate or apprehend him.

The government would have this Court believe, based on email correspondence with defense counsel which is attached to the government's opposition, that Rivera is simply refusing to come back.  There is no evidence of that.  Months after the deportation had occurred, defense counsel sent the AUSA an email exploring a possible resolution of the case.  This was purely an exploratory effort to see if a resolution could be reached on a unique and embarrassing situation for the government.  There is no mention in defense counsel's email that counsel had spoken with his client after the deportation or that counsel was able to

coordinate the client's return to the U.S.  The purpose of the email was to see if an opportunity existed from the government's standpoint to resolve this case with a time-served sentence.

At the hearing on this motion, defense counsel will represent to the Court that he has not spoken with Rivera after the deportation and in fact did not even know about the deportation until over a month after it had occurred, a fact acknowledged in the government's opposition.

Thus, the government cannot persuasively contend that Rivera is "successfully resisting government efforts to bring him to the jurisdiction" based on email correspondence with defense counsel.  Indeed, the emails hardly demonstrate that Rivera has been deliberately evading authorities; and as discussed earlier, the government has presented no evidence of being reasonably diligent in attempting to locate him.  Thus, the government is clearly wrong is seeking to redirect blame away from itself to Rivera for the situation at hand.  See, e.g., United States v. Sperow, 494 F.3d 1223, 1226-1227 (9th Cir. 2007) ("Given the findings that Sperow deliberately evaded authorities and the government was reasonably diligent in attempting to locate him, the district court correctly found that Sperow himself was the reason for the delay in his  arrest.")

Finally, it is particularly troubling that the government would want this Court to agree with its argument that the deportation was entirely inadvertent; yet,

14

1  at the same time, the government wants to hold Rivera responsible to come back to

2
3  the U.S., essentially requiring Rivera to undo the government's mistake.  And to

4  highlight this arrogance, the government takes the position that if Rivera fails to

5  undo the government's mistake, then Rivera pays the price of being classified as a

6
7  fugitive and is thus denied the benefit of a speedy trial violation.

8
9                                              IV.

10
11                                      CONCLUSION

12          Based on the arguments presented in the original moving papers and herein,

13  defendant Alexander Rivera respectfully asks the Court to dismiss the pending

14
15  charges on speedy trial grounds.  Alternatively, Rivera requests that the Court

16  conduct an evidentiary hearing to determine whether the government can meet its

17  burden of proof under 18 U.S.C. 3161(h)(3)(A), (B).

18
19
20  DATED: February 17, 2010                    Respectfully Submitted,

21
22
23                                      _____/S/_____
24                                      GREGORY NICOLAYSEN
25                                      Counsel for Defendant,
                                        Alexander Rivera
26
27
28                                              15